[No. 32681-3-I.   Division One.   April 11, 1994.]

HERMAN TABAK, ET AL, *Appellants*, v. THE STATE OF WASHINGTON, *Respondent*.

*Breean Beggs* and *Brett & Daugert,* for appellants.
*Christine O. Gregoire, Attorney General,* and *Loretta M. Lamb, Assistant,* for respondent.

KENNEDY, J. — Herman and Leah Tabak appeal the trial court's grant of summary judgment to the State of Washington. Specifically the Tabaks contend that the trial court erred in dismissing their lawsuit because genuine issues of material fact exist relating to the State's immunity under

the Washington recreational land use statutes, RCW 4.24.200-.210.[1] We agree.[2]

## FACTS

This case arises out of an accidental trip and fall at Lake Terrell Wildlife Area near Ferndale, Washington, which is owned by the State of Washington and managed by the Department of Wildlife (the Department). The property is open for public recreation, without charge.

Thomas A. Reed manages the area for the Department. He is largely responsible for maintenance and supervision. Heavy maintenance responsibilities are performed by the Lacey construction shop, part of the Lands Area Management Division of the Department. The area grounds are patrolled periodically to look for safety hazards and vandalism.

The Department maintains a floating fishing platform on Lake Terrell. The platform consists of three long, narrow, rectangular floats and one smaller triangular float. The long narrow floats are bolted together to form a relatively stable unit. When properly bolted together they float on the water, level, forming an unbroken walking surface. The bolts which hold the floats together are under the walking surface and are not visible to users. Since the entire platform

---

[1]RCW 4.24.200 provides: "The purpose of RCW 4.24.200 and 4.24.210 is to encourage [land]owners . . . to make [their land] available to the public for recreational purposes by limiting their liability toward persons entering thereon . . .."

RCW 4.24.210 was amended in 1992 and 1991, but the changes do not affect the provisions at issue in this appeal. *See* Laws of 1992, ch. 52, § 1(3); Laws of 1991, ch. 69, § 1; Laws of 1991, ch. 50, § 1. The former statute provided:

> Any public or private landowners . . . who allow members of the public to use [their land] for the purposes of outdoor recreation . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users: . . . Provided . . . That nothing in this section shall prevent the liability of such a landowner . . . for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted . . ..

[2]In reaching this conclusion we have applied the usual standard of review of a summary judgment case. *See, e.g., Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963); *Carle v. McChord Credit Union*, 65 Wn. App. 93, 104, 827 P.2d 1070 (1992).

floats, it has some natural wobble from wave action and movement of people across it.

In December 1990, a winter storm broke some of the five-eighths-inch bolts holding two parts of the float together. In March 1991, Reed became aware of the problem and requested that the Lacey construction shop fix the float. The float was repaired between March 11 and 14, 1991, by replacing the broken bolts. There is disputed evidence that Reed may have discovered another problem with the bolts somewhere between February and May 1991.

Between March 14, 1991, and July 30, 1991, there were no new reports of any problem with the fishing floats. On July 30, 1991, the Lacey shop crew discovered that the bolts on the fishing floats were broken again. On October 14, 1991, the dock was repaired once again, but this time the crew replaced the five-eighths-inch bolts with stronger three-fourths-inch bolts.

On May 14, 1991, Herman and Leah Tabak went to the Lake Terrell Wildlife Area to go fishing. Mrs. Tabak walked along the far left side of the fishing float. She reached the end of the float safely. A few minutes later, Mr. Tabak walked down the right side of the float. Mr. Tabak noticed a slight difference in height between the two floats on his immediate right, so as he approached the area where the two floats joined he moved slightly to his left. As Mr. Tabak walked, the float sank underneath him creating a step-up of 3 to 4 inches to the next float. Mr. Tabak tripped over the step-up and fell, breaking his leg.

Reed learned of Mr. Tabak's injury only after a claim was filed with the Department. The injury was not reported to him when it occurred. Neither was any report left at the office on the grounds.

## DISCUSSION

Washington's recreational land use act, RCW 4.24.200-.210, was enacted to encourage owners of land and water areas to make them available for public recreation by limiting the owner's liability to those injured while on the

property. The scope of liability of landowners under the act is controlled by RCW 4.24.210. A landowner who has made land available for recreational users free of charge cannot be held liable for unintentional injuries to users unless the landowner has failed to warn of a (1) known, (2) dangerous, (3) artificial and (4) latent condition.[3]

As written, the four terms — "known", "dangerous", "artificial" and "latent" — modify "condition", not one another. *Van Dinter v. Kennewick*, 121 Wn.2d 38, 46, 846 P.2d 522 (1993) (citing *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 610, 774 P.2d 1255, *review denied*, 113 Wn.2d 1020 (1989)).

The trial court based its summary judgment ruling on the Tabaks' supposed failure to present evidence of the State's actual knowledge of the condition. However, because each of the four elements required by the recreational land use act was before the trial court, each will be addressed by this court.

## "Known"

The State contends there was no actual knowledge of the condition at the time of Mr. Tabak's injury, because Mr. Tabak could not produce either a written report or an oral statement establishing the State's knowledge of the condition.

---

[3]Our review of similar recreational land use statutes in other states reveals that our statute's limitation of immunity is unique. Other statutes, many of which are based on the Council of State Gov'ts, *Suggested State Legislation* vol. 24, at 150-52 (1965) suggested model act, provide immunity unless the landowner acts intentionally in not warning of a condition which poses risk of serious injury or death or is guilty of willful, malicious or grossly negligent conduct which is a direct cause of injury to the recreational user. *See, e.g.*, Ala. Code § 35-15-24 (1991); Ariz. Rev. Stat. Ann. § 33-1551 (Supp. 1993); Conn. Gen. Stat. Ann. § 52-557h (1993); Iowa Code Ann. § 461C.6 (Supp. 1994); Mass. Gen. Laws Ann. ch. 21, § 17C (West Supp. 1994); Tenn. Code Ann. § 70-7-104 (1987); Wyo. Stat. § 34-19-105 (1990). The model act works a fundamental change in the law by shifting the burden of liability for most injuries from the landowner, who may be in a position to prevent accidents, to the entrant, who may be entirely powerless to avoid them.

The Washington statute, imposing liability for conditions which are known, dangerous, artificial and latent unless a conspicuous warning sign is posted, conditions a landowner's statutory immunity for nonintentional injuries entirely upon these four factors. The effect of the Washington statute is to impose more potential liability on a landowner than under the model act.

In order to constitute a "known" condition for purposes of the recreational land use act, the landowner must have actual, as opposed to constructive, knowledge that a dangerous, latent condition exists. *Gaeta*, 54 Wn. App. at 609 (citing *Morgan v. United States*, 709 F.2d 580, 583-84 (9th Cir. 1983)).

■ The State's argument confuses the fact of actual knowledge with how it can be proved. A plaintiff may establish any fact by circumstantial evidence.[4] Where actual knowledge is denied, a plaintiff must come forward with evidentiary facts from which a trier of fact could reasonably infer actual knowledge, by a preponderance of the evidence.

Here, the record contains Reed's deposition stating that he learned that the bolts were broken sometime between February and May of 1991. During the questioning on the subject, the Tabaks' attorney tried to clarify his question by asking specifically about Reed's knowledge of the broken bolts that led to Mr. Tabak's fall. Reed's answer remained the same. However, in his declaration in support of the motion for summary judgment, Reed swears that the problem he learned of in early 1991 was repaired in March 1991. Reed goes on to swear that he did not learn of another problem with the float until June 1991. Thus, there is an inconsistency between Reed's deposition testimony and his declaration.

■ Although it is possible to reconcile Reed's inconsistent statements by assuming that he misspoke during his deposition and that he was talking about the broken bolts that were repaired in March 1991, that determination is for the trier of fact. *Powell v. Viking Ins. Co.*, 44 Wn. App. 495, 503, 722 P.2d 1343 (1986) (conflicting statements on a material fact by the same witness preclude summary judgment).

Construing the evidence most favorably to the nonmoving party, as we must, we hold that a rational trier of fact could

---

[4]*See* WPI 1.03 (circumstantial evidence is evidence from facts or circumstances from which the existence or nonexistence of other facts may be reasonably inferred from common experience); *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 356, 493 P.2d 1018 (1972) (proof of fact to be established may be by direct or circumstantial evidence); *Arnold v. Sanstol*, 43 Wn.2d 94, 98-99, 260 P.2d 327 (1953) (substantial evidence to support a verdict may be direct or circumstantial).

reasonably infer actual knowledge of the condition which caused Mr. Tabak to fall in May 1991, based on Reed's deposition testimony. Accordingly, the trial court erred in granting the State's motion for summary judgment on this basis.

### "Dangerous"

The State contends that the Tabaks failed to produce any evidence to establish that the condition was dangerous. In addition, the State points to the successful use of the float by Mrs. Tabak as evidence that the condition was in fact not dangerous.

Mr. Tabak contends that the 3- to 4-inch unexpected step-up which materialized out of nowhere as he walked along the float was dangerous, as evidenced by the very fact that he tripped over the step-up and fell, breaking his leg.

"'Dangerous' is not defined [by the recreational land use act], but at the very least, should be defined in terms of common law negligence, namely, a condition that poses an unreasonable risk of harm." *Gaeta*, 54 Wn. App. at 609 (citing William L. Prosser, *Torts* § 31 (4th ed. 1971)).

Here, the record contains evidence of the dangerousness of the condition. The fact that the dock sank unexpectedly beneath Mr. Tabak's feet and that he tripped and fell, together with the extent of Mr. Tabak's injury, provides a basis for a rational trier of fact to find that the condition posed an unreasonable risk of harm. Accordingly, we cannot uphold the summary judgment on this basis.

### "Artificial"

The State concedes that the condition was artificial.

### "Latent"

Both the Tabaks and the State agree that the broken bolts could not be seen because they were located under the fishing float. Mr. Tabak contends that the sudden step-up, which materialized as he walked on the float, was latent. The State contends otherwise.

■ This dispute apparently arises from the parties' differing conception of what the "condition" was, with Mr. Tabak focusing on the broken bolts which caused the dock to sink beneath his weight and the State focusing on Mr. Tabak's statement that, before he fell, he could detect a slight difference in the height between the two floats, so that the condition was the unevenness of the floats and not the broken bolts. For purposes of summary judgment, Mr. Tabak's version must prevail. Where there is a dispute, the ultimate determination of what the condition was is for the trier of fact. *Van Dinter*, 121 Wn.2d at 44.

■ The term "latent", as used in RCW 4.24.210, refers to the condition itself. *Van Dinter v. Kennewick*, 64 Wn. App. 930, 934, 827 P.2d 329 (1992), *aff'd*, 121 Wn.2d 38, 846 P.2d 522 (1993). A latent condition is one not readily apparent to the recreational user. *Gaeta*, 54 Wn. App. at 609 (citing *Preston v. Pierce Cy.*, 48 Wn. App. 887, 892, 741 P.2d 71 (1987), *overruled on other grounds in Van Dinter*, 121 Wn.2d at 46); *Morgan*, 709 F.2d at 583-84. If a defect is obvious then it cannot be latent. *Gaeta*, 54 Wn. App. at 610. Whether a condition is "latent" or "patent" can present a factual question. *Preston*, 48 Wn. App. at 892 (citing *Seattle-First Nat'l Bank v. Volkswagen of Am., Inc.*, 11 Wn. App. 929, 934, 525 P.2d 286 (1974), *aff'd sub nom. Seattle-First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 542 P.2d 774 (1975)).

The record reflects that neither Herman Tabak nor his wife knew of the broken bolts until after Mr. Tabak had fallen. While it is true that Mr. Tabak noticed the unevenness of a portion of the float, there was nothing about the fact of that unevenness that would necessarily have put him on notice, as he stepped onto the end of the float, that it would suddenly sink beneath his weight. The broken bolts certainly were not obvious as a matter of law. The fact that Mrs. Tabak made it safely to the end of the dock can also be considered by the trier of fact in the course of its determination of what was or was not obvious to Mr. Tabak. Accordingly, we cannot uphold the summary judgment on this basis.

We reverse and remand for trial on the merits.

WEBSTER, C.J., and FORREST, J. Pro Tem., concur.