[No. 35244-0-I. Division One. September 5, 1995.]

WILLIAM CHAMBERLAIN, *Appellant*, v. THE DEPARTMENT OF TRANSPORTATION, ET AL., *Respondents*.

*Timothy S. McGarry*, for appellant.

*Christine O. Gregoire, Attorney General*, and *John J. Kirschner, Assistant*, for respondents.

Cox, J. — Kekoa Chamberlain, a seven-year-old boy, and his family were sightseeing on the Deception Pass Bridge. They crossed the roadway between the abutting walkways to take pictures and to enjoy the view. While Kekoa was standing near the edge of one of the walkways, a passing motorist struck him. He died later that day. His estate sued the motorist and the State. The trial court granted the State's motion for summary judgment of dismissal. The estate appeals. Because recreational use immunity (RCW 4.24.200-.210) bars recovery against the State under the circumstances of this case, we affirm.

On February 18, 1991, Kekoa Chamberlain, his parents, and his two sisters were visiting Whidbey Island. They stopped at the Deception Pass Bridge to view the scenery from the bridge. When they arrived, they parked in a lot at the southwest end of the bridge. Signs posted at the end of the bridge declared it to be a "Scenic Overlook" and warned both of the presence of pedestrians on the bridge and the danger posed by passenger side mirrors on the passing vehicles to pedestrians on the walkways.

William Chamberlain, Kekoa's father, and his three children used the walkway on the west side of the bridge to walk to the center of the span. After a few minutes, Mr. Chamberlain and his oldest daughter crossed to the walkway on the east side of the bridge. The two took pictures of the others and crossed back and forth a couple of times. The Chamberlains had been on the bridge about fifteen or twenty minutes when Karl Sorensen drove his

1971 Chevy Blazer onto the bridge at approximately twenty miles an hour. He saw Kekoa standing near the edge of the walkway as he approached and heard a "thud" as he passed that spot. Sorensen pulled over at the end of the bridge and ran back to find Kekoa lying in the road. Kekoa was pronounced dead later that day.

William Chamberlain, as the personal representative for the estate of Kekoa Chamberlain, commenced this action against Sorensen and the State of Washington. Sorensen settled separately with the estate. The State moved for summary judgment, asserting that it was immune from liability under the recreational use immunity statute, RCW 4.24.200-.210. The trial court granted summary judgment to the State after concluding that (1) the State was entitled to recreational use immunity under RCW 4.24.200-.210; and (2) no act or omission of the State was a legal proximate cause of the accident resulting in Kekoa's death. The estate appeals the summary judgment of dismissal.

## I

### RECREATIONAL USE IMMUNITY STATUTE

■ ■ In reviewing a summary judgment order, we engage in the same inquiry as the trial court. *Tollycraft Yachts Corp. v. McCoy*, 122 Wn.2d 426, 431, 858 P.2d 503 (1993); *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Marincovich*, 114 Wn.2d at 274. On appeal of a summary judgment order where the facts relevant to the issue on appeal are not in dispute, the standard of review is de novo. *Tollycraft Yachts*, 122 Wn.2d at 431. When reasonable minds can reach but one conclusion, questions of fact may be determined as a matter of law. *Ruff v. King County*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995) (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)). More than speculation or mere possibility is required to

successfully oppose summary judgment. *Pelton v. Tri-State Memorial Hosp. Inc.*, 66 Wn. App. 350, 355, 831 P.2d 1147 (1992).

Chamberlain first contends that the recreational use immunity statute, RCW 4.24.200-.210, does not apply in this case. Former RCW 4.24.210 provides in pertinent part:

> Any public or private landowners or others in lawful possession and control of any lands whether designated resource, rural, or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation, which term includes, but is not limited to . . . viewing or enjoying historical, archaeological, scenic, or scientific sites, without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users: . . . PROVIDED FURTHER, that nothing in this section shall prevent the liability of such a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted . . .

Laws of 1991, ch. 50, § 1, p. 386. RCW 4.24.200, which addresses the purpose of the recreational use immunity statute, provides:

> The purpose of RCW 4.24.200 and 4.24.210 is to encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon.

The recreational use immunity statute clearly applies to both public and private landowners, and it is undisputed that the Chamberlain family was on the bridge on the day of the accident for recreational purposes. They were viewing the scenery from the walkways along the bridge. It is also undisputed that the State of Washington does not charge a fee for use of the bridge for sightseeing purposes. Chamberlain argues nevertheless that RCW 4.24.200-.210 do not apply because the bridge is not "land" for purposes of the statute. He notes that, under *State v. Vantage*

*Bridge Co.*, 134 Wash. 568, 573, 236 P. 280 (1925), a bridge across a body of water is a public highway and that the entire surface of the bridge falls within the definitions of "highway" and "sidewalk" in RCW 46.04.431 and RCW 46.04.540, respectively.

 The fundamental objective of statutory construction is to ascertain and carry out the intent of the Legislature. *Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). Where statutory language is plain and unambiguous, the statute's meaning must be derived from the wording of the statute itself. *Rozner*, 116 Wn.2d at 347. Each provision of the statute should be read in relation to the other provisions, and the statute should be construed as a whole. *State v. Sommerville*, 111 Wn.2d 524, 531, 760 P.2d 932 (1988). A literal reading of a statute is to be avoided if it would result in unlikely, absurd, or strained consequences. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989). The interpretation which is adopted should be the one which best advances the legislative purpose. *Rozner*, 116 Wn.2d at 347. When there is more than one legislative enactment which could apply, both statutes should be interpreted to give meaning and effect to each. *Riksem v. Seattle*, 47 Wn. App. 506, 510, 736 P.2d 275 (citing *Davis v. King County*, 77 Wn.2d 930, 468 P.2d 679 (1970)), *review denied*, 108 Wn.2d 1026 (1987).

 In ascertaining the meaning of a particular word as used in a statute, a court must consider both the statute's subject matter and the context in which the word is used. *State v. Rhodes*, 58 Wn. App. 913, 920, 795 P.2d 724 (1990). A term that is not defined in a statute should be given its plain and ordinary meaning unless a contrary legislative intent is indicated. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992); *In re Brazier Forest Prods., Inc.*, 106 Wn.2d 588, 595, 724 P.2d 970 (1986). When an undefined term used in a statute is not a technical term and can be used to describe a variety of interests, the meaning of the term should be determined from the context in which it is used in the

statute being construed, rather than unrelated statutes. *Key Bank v. Everett*, 67 Wn. App. 914, 919, 841 P.2d 800 (1992), *review denied*, 121 Wn.2d 1025 (1993).

In construing the statute to exclude the Deception Pass Bridge on the ground that it is not "land," Chamberlain fails to read the word "land" in the context of the statute as a whole. RCW 4.24.200, which sets forth the purpose of the recreational use immunity statute, explains that RCW 4.24.210 is intended to apply to "land and water areas or channels . . ." This statement is sufficiently broad to make clear that the Legislature intended the statute to apply not only to "land" in its most literal sense or to land that serves no other purpose, but to "land *areas*" generally, in addition to water areas or channels, including any artificial structures associated with those areas. *Cf. McCarver v. Manson Park & Recreation Dist.*, 92 Wn.2d 370, 377, 597 P.2d 1362 (1979) (declining to impose a limiting construction differentiating land classifications based on primary and secondary uses); *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 607, 774 P.2d 1255 (applying RCW 4.24.210 to a road running across the top of a dam and noting that the key is that the person in possession and control allows the public to use the area for recreational purposes without charging a fee), *review denied*, 113 Wn.2d 1020 (1989); *Riksem*, 47 Wn. App. at 512 (declining to limit construction based on primary and secondary uses of land). The fact that "highway" and "sidewalk" are defined elsewhere does not require that they be excluded from the provisions of the recreational use immunity statute. *See Riksem*, 47 Wn. App. at 510 (the fact that the trails and paths statute also applies to the Burke-Gilman Trail does not preclude application of the recreational use immunity statute). Whether one considers a bridge to be more closely associated with the land areas it links or the water channel it bridges, there is no question that the Legislature intended that bridges such as the Deception Pass Bridge—as long as they are expressly made available for recreational use and no fee is charged—be included in

the "land and water areas or channels" to which RCW 4.24.200-.210 applies.

*Kucher v. Pierce County*, 24 Wn. App. 281, 600 P.2d 683 (1979), to which Chamberlain cites in his reply brief, turns on whether the property at issue was "forest" within the meaning of the statute as it was then worded. *Kucher* was superseded by statute when the Legislature deleted the limitation to agricultural and forest lands in its 1979 amendments to the statute. *See Bernstein v. State*, 53 Wn. App. 456, 461, 767 P.2d 958, *review denied*, 112 Wn.2d 1024 (1989). It is therefore inapposite.

## II

### EXCEPTION TO THE RECREATIONAL USE IMMUNITY STATUTE

■■ Chamberlain also argues that even if the recreational use immunity statute applies in this case, questions of material fact exist as to the application of the exception under the statute for "a known dangerous artificial latent condition for which warning signs have not been conspicuously posted" which preclude summary judgment. *See* RCW 4.24.210. For purposes of the recreational use immunity statute, "latent" has been defined as "not readily apparent to the recreational user." *Van Dinter v. Kennewick*, 121 Wn.2d 38, 45, 846 P.2d 522 (1993); *Gaeta*, 54 Wn. App. at 609. The condition itself, and not simply the danger it poses, must be latent. *Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 554, 872 P.2d 524, *review denied*, 124 Wn.2d 1029 (1994). Whether a condition is latent or patent can create a factual question in appropriate circumstances. *See Tabak v. State*, 73 Wn. App. 691, 698, 870 P.2d 1014 (1994). An obvious defect, however, cannot be latent. *Tabak*, 73 Wn. App. at 698 (citing *Gaeta*, 54 Wn. App. at 610). The dispositive question is whether the condition is readily apparent to the general class of recreational users, not whether one user might fail to discover it. *Tennyson*, 73 Wn. App. at 555.

Here, the photographs of the bridge which are included in the record make clear that the proximity of the

walkways to vehicular traffic and the traffic to which an individual would be exposed if he or she chose to cross the bridge at mid-span cannot be deemed other than open and apparent. Mr. Chamberlain himself admits that he was aware of the danger represented by the motor vehicle traffic and that he had warned his children at least twice of that danger. In these circumstances, we must conclude that the danger existing on the bridge was "readily apparent to the recreational user." *See Van Dinter*, 121 Wn.2d at 45; *Riksem*, 47 Wn. App. at 511 (signs warning of the danger of collision with joggers were not necessary along the Burke-Gilman Trail because the trail itself would put a reasonable person on notice to watch out for joggers, pedestrians, and other cyclists). Because the condition here was readily apparent, it was not latent and the exception to the recreational use immunity statute does not apply. *See* RCW 4.24.210.

Chamberlain attempts to create a factual issue by suggesting that it is unclear how the accident occurred. He argues that it is unclear whether Kekoa stepped off the walkway in front of the oncoming car or was hit while he was still on the walkway. Sorensen's testimony that Kekoa was on the walkway as he approached is consistent with that of Kekoa's father that he, too, saw Kekoa on the sidewalk until he disappeared from view behind the passing truck. Sorensen testified that his vehicle did not have a sideboard or running board, and there is no evidence of a passenger side mirror. Significantly, the evidence reflects that the only damage to Sorensen's vehicle was to the front passenger side headlight. Even if a mirror had been involved, moreover, signs concerning the danger posed by such mirrors were posted and therefore the latent condition exception to the recreational use immunity act would not apply. Finally, even if a factual issue did exist as to precisely how the accident occurred, that issue is not material. In the absence of any evidence suggesting that the injuries were other than unintentional, RCW 4.24.200-.210 applies to bar this action. *See Ruff*, 125 Wn.2d at 703 (a material fact is one which affects the outcome of litiga-

tion). More than mere speculation or possibility is required to defeat a summary judgment motion. *See Pelton*, 66 Wn. App. at 355.

It is undisputed that the Chamberlains were standing and walking on the bridge for outdoor recreational purposes when the accident occurred. The proviso of the statute does not apply because there was no latent defect. We hold that RCW 4.24.200-.210 bars the action under the circumstances of this particular case. We wish to make clear, however, that we express no opinion about the application of the statute to others who may pass over the bridge for purposes other than outdoor recreation.

A majority of the panel has concluded that the remainder of this opinion lacks precedential value. Therefore only the foregoing will be published. The opinion shall be filed for public record as provided in RCW 2.06.040.

KENNEDY, A.C.J., and BECKER, J., concur.