[No. 15233-2-III. Division Three. August 21, 1997.]

ROBERT RAVENSCROFT, ET AL., *Respondents*, v. THE WASHINGTON WATER POWER COMPANY, *Petitioner*, SPOKANE COUNTY DEPARTMENT OF EMERGENCY SERVICES, *Respondent*.

*Donald G. Stone, Mary M. Palmer,* and *Paine, Hamblen, Coffin, Brooke & Miller,* for petitioner.

406

*James F. Combo;* and *Hugh T. Lackie, Amy C. Clemmons,* and *Evans, Craven & Lackie, P.S.,* for respondents.

KURTZ, J. — Robert Ravenscroft was injured when the speedboat in which he was a passenger hit a submerged tree stump. The accident occurred on a lake created by a Washington Water Power (WWP) dam and regulated for safety by Spokane County (the County). Mr. Ravenscroft sued WWP and the County. Claiming immunity under the Washington recreational use statute, WWP asked the trial court to dismiss the claim against it. The court denied the motion based upon the exception for a known, dangerous, artificial, and latent condition. We reverse, holding the presence of a dam and submerged tree stumps do not create artificial and latent conditions precluding immunity under the recreational use statute.

The County asked the trial court to dismiss Mr. Ravenscroft's claims based upon the public duty doctrine. The court denied the motion, holding that issues of fact existed regarding whether the legislative intent and failure to enforce exceptions applied. We hold the legislative intent exception does not apply because the relevant safety statutes are primarily aimed at protecting the public and not a special class which included Mr. Ravenscroft. Further, we hold that the failure to enforce exception does not apply for the reason that the relevant statutes lack directives to undertake specific corrective action.

Mr. Ravenscroft asserts a claim against the County as a third party beneficiary to a cooperative agreement between the State of Washington and the County. This agreement provides state funding for boating safety and enforcement programs in exchange for County participa-

tion in the programs. The County asked the trial court to dismiss this claim based upon the public duty doctrine. The court denied the motion, holding that there is a question of fact as to whether Mr. Ravenscroft was a third party beneficiary to the contract. We reverse, holding that the claim is barred by the public duty doctrine.

Finally, the trial court dismissed all of Mr. Ravenscoft's common-law claims against the County. We agree with the court because the County's duty to recreational users in a state recreational area is defined by the recreational use statute and not by common-law principles.

We reverse in part and affirm in part.

## FACTS

On June 24, 1990, Robert Ravenscroft was a passenger in a recreational speedboat which hit a submerged, rooted tree stump on an area of the Spokane River, commonly called Long Lake (the Reservoir). When the boat hit the stump, the motor broke from its attachment and struck Mr. Ravenscroft, who subsequently brought suit against Spokane County and WWP.

WWP owns and operates the Spokane River Hydro-Electric Project pursuant to a Federal Power Commission license. The project extends along the Spokane River from Upper Falls Dam to Long Lake Dam. The Nine Miles Falls Dam was transferred to WWP by deed dated June 23, 1925. The deed reflects the transfer of riparian and overflow rights between the Spokane city limits and the mouth of the Little Spokane River downstream from the Nine Mile Dam, which includes the area of Mr. Ravenscroft's accident. The Nine Miles Falls Dam is a "run of the river" facility, meaning that, with high water, water flows over the dam. Overflow naturally occurs into the area of the location of the rooted tree stump involved in Mr. Ravenscroft's accident. The Long Lake Dam was constructed in 1910 and initially had a maximum pool elevation substantially less than the present level. In order to increase

power production, WWP has raised the level of the Reservoir over the years.

Mr. Ravenscroft's accident occurred in an area where trees once stood, bordering the original bank of the Spokane River. When WWP raised the elevation of the Reservoir in 1949, the trees became surrounded by water. Gradually the trees died, but many of the snags remained standing above the water for years. Sometime later, WWP cut down and removed the snags, but they left the stumps. Throughout the boating season, WWP has maintained the level of the Reservoir at 1,536 feet to provide maximum storage for hydroelectric power production. During the summer months when the pool is held at maximum level, the stumps are submerged below the water. WWP makes its project boundaries available for recreational use without a fee, pursuant to its federal license.

The area where the accident occurred is within the boundaries of Riverside State Park which is owned and operated by the Washington State Parks and Recreation Commission (State Parks). State Parks has authorized the Spokane County Sheriff's Department, Marine Division, to control the waterways.

The County has patrolled the waterways in Spokane County since the early 1940s to enforce local and state boating regulations. One function of the patrol is to educate and protect the public from unsafe boating conditions they may encounter in Spokane County waterways. To that end, the County has maintained a buoy program dating back to the late 1970s in which it marks State wildlife ramps, regulates boating traffic and marks dangerous hazards in County waterways.

State Parks provides boating safety funds to local agencies and other organizations to enhance their boating safety programs pursuant to the Boating Safety Grant and Contract Program, WAC 352-64. In return for the grant money, the local entity must, among other things, adhere to the statutory requirements which include patrolling and marking the waterways. WAC 352-65-040(5), (7).

State Parks and the County entered into a cooperative agreement required by WAC 352-64-070(5) which set forth the respective rights and duties of each party. In exchange for the grant money, the County agreed to undertake certain boating safety responsibilities. In particular, the County agreed to patrol the waterways of Spokane County, investigate any unsafe boating conditions, and provide information to the boating public regarding those unsafe conditions. They also agreed to provide boating safety services.

After Mr. Ravenscroft's accident, representatives of the Spokane County Sheriff's Department, Marine Division, State Parks and WWP attempted to obtain a permit from the State to remove the rooted tree stump. The State would not issue the permit because removing the stumps would disrupt the fish and other natural habitat.

Mr. Ravenscroft brought suit against WWP and the County. Both WWP and the County moved for summary judgment alleging they were immune from liability under the recreational use statute, RCW 4.24.210. The County also argued Mr. Ravenscroft's claim was barred by the public duty doctrine.

The trial court refused to apply the recreational use statute to the County because the County was not in lawful possession and control of the premises and thus did not qualify for its immunity. The court found WWP had sufficient possession and control of the area to qualify for the statute's immunity, but held WWP may be liable because through its dams, WWP was able to manipulate the water level of the Reservoir, thus creating an artificial condition. The court also found a question of fact existed as to whether the artificial condition was latent.

The court found the public duty doctrine applicable to the County, but concluded issues of fact existed as to whether the failure to enforce exception and the legislative intent exception applied. In addition, the trial court held an issue of fact existed as to whether Mr. Ravenscroft was a third party beneficiary of the cooperative

agreement between the State and County. The remainder of Mr. Ravenscroft's common-law causes against the County including all premises liability theories were dismissed. WWP, the County and Mr. Ravenscroft all raise issues on appeal.

## ANALYSIS

■ Standard of Review. In reviewing a summary judgment order, we engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990); *Chamberlain v. Department of Transp.*, 79 Wn. App. 212, 215, 901 P.2d 344 (1995). Summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Marincovich*, 114 Wn.2d at 274.

■ ■ Recreational Use Statute. Washington's recreational use statute, RCW 4.24.200-.210, was enacted to encourage owners of land and water areas to make them available for public recreation by limiting the owner's liability to persons injured while on the property. *Tabak v. State*, 73 Wn. App. 691, 694-95, 870 P.2d 1014 (1994). A landowner who makes land available for recreational users free of charge cannot be held liable for unintentional injuries to users unless the landowner fails to warn of a (1) known, (2) dangerous, (3) artificial, and (4) latent condition. *Tabak*, 73 Wn. App. at 695. The terms "known," "dangerous," "artificial," and "latent" all modify "condition," not each other. *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 46, 846 P.2d 522 (1993).

■ ■ In ascertaining the meaning of a particular word as used in a statute, a court must consider both the statute's subject matter and the context in which the word is used. *State v. Rhodes*, 58 Wn. App. 913, 920, 795 P.2d 724 (1990). A term that is not defined in a statute should be given its plain and ordinary meaning unless a contrary legislative intent is indicated. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992);

*In re Brazier Forest Prods., Inc.,* 106 Wn.2d 588, 595, 724 P.2d 970 (1986).

■ <u>Artificial.</u> The trial court found the condition causing the accident was artificial because "there is no question but that at the time of the accident the water was much higher than it would have been under normal conditions without the dams in place." The trial court apparently adopted one of Mr. Ravenscroft's suggested definitions of "artificial" in determining the water level was an artificial condition. These definitions all essentially state a condition is artificial where any human effort or work is reflected in the condition. However, in light of the statutory scheme, such definitions are too broad and would significantly limit the protection afforded by the recreational use statute.

The statement of legislative purpose for the recreational use statute is to make "land and water areas or channels" available to the public for recreational purposes while limiting the liability of owners, or those in lawful possession of such areas, to recreational users. RCW 4.24.200. The statute does not distinguish among historical natural watercourses and reservoirs formed by dams.

Washington courts interpreting the recreational use statute have ruled it applies to certain conditions which are the result of human effort. *See Chamberlain,* 79 Wn. App. 212 (immunity granted where injury occurred on Deception Pass bridge); *Gaeta v. Seattle City Light,* 54 Wn. App. 603, 774 P.2d 1255 (applying RCW 4.24.210 to a road running across the top of a dam), *review denied,* 113 Wn.2d 1020 (1989); *Riksem v. City of Seattle,* 47 Wn. App. 506, 736 P.2d 275 (immunity granted where bike rider injured on Burke-Gilman Trail), *review denied,* 108 Wn.2d 1026 (1987).

■ In *Chamberlain,* the plaintiff sustained injuries while visiting the bridge at Deception Pass. Mr. Chamberlain argued the bridge was not encompassed within the recreational use statute because it is not "land." The *Chamberlain* court held the word "land" had to be read in the context of the statute as a whole:

RCW 4.24.200, which sets forth the purpose of the recreational use immunity statute, explains that RCW 4.24.210 is intended to apply to "land and water areas or channels. . ." This statement is sufficiently broad to make clear that the Legislature intended the statute to apply not only to "land" in its most literal sense or to land that serves no other purpose, but to "land areas" generally, in addition to water areas or channels, *including any artificial structures associated with those areas.*

*Chamberlain,* 79 Wn. App. at 218 (emphasis added). Applying this reasoning to the facts of the present case, the artificial structure or Reservoir associated with the river's water area is encompassed within the protection afforded under RCW 4.24.210. Here, the water level of the Reservoir is not an "artificial" condition merely because it was created as a result of the erection of the dam.

█ █ Mr. Ravenscroft argues the submerged tree stumps constitute an artificial condition because they were created by the human act of cutting trees which had died as a result of higher water levels. In *Swanson v. McKaine,* 59 Wn. App. 303, 313-14, 796 P.2d 1291 (1990), *review denied,* 116 Wn.2d 1007 (1991), the trial court ruled the recreational use statute barred plaintiff's action for injuries sustained when he dove into a body of water and struck a floating tree stump because the floating tree stump was a natural condition. Likewise, in *Ochampaugh v. City of Seattle,* 91 Wn.2d 514, 588 P.2d 1351 (1979), the Court determined the slippery debris, changing contours and murky, muddy waters of a man-made pond were natural conditions and for that reason, the pond did not constitute an "attractive nuisance." *Ochampaugh,* 91 Wn.2d at 517.

The water level of the Reservoir and the underwater tree stumps are man-made conditions but they have existed for many years and emulate natural conditions. For the purposes of the recreational use statute, they are natural conditions as a matter of law.

█ █ Latent. The trial court ruled the question of

whether the stumps constituted a latent condition presented. an issue of fact. A latent condition is one that is not readily apparent to a recreational user. *Chamberlain*, 79 Wn. App. at 219 (citing *Van Dinter*, 121 Wn.2d at 45). For liability to be found, the condition, not the danger, must be latent. *Chamberlain*, 79 Wn. App. at 219 (citing *Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 554, 872 P.2d 524, *review denied*, 124 Wn.2d 1029 (1994)).

In appropriate circumstances, whether a condition is latent or apparent to the average recreational user is a factual question for the jury. *Chamberlain*, 79 Wn. App. at 219 (citing *Tabak*, 73 Wn. App. at 698). An obvious defect, however, cannot be latent. *Tabak*, 73 Wn. App. at 698 (citing *Gaeta*, 54 Wn. App. at 610). The dispositive question is whether the condition is readily apparent to the general class of recreational users, not whether one user might fail to discover it. *Tennyson*, 73 Wn. App. at 555.

 Here, the question is whether the presence of submerged stumps was readily apparent to recreational boaters. Risks associated with natural bodies of water are deemed obvious and apparent. *Swanson*, 59 Wn. App. at 310-11 (citing *Ochampaugh*, 91 Wn.2d 514). Further, natural conditions are "obvious and apparent" as a matter of law. *Swanson*, 59 Wn. App. at 314. Underwater hazards such as tree stumps are apparent to recreational users in general. For the purposes of the recreational use statute, submerged tree stumps that have existed for many years are not latent but are obvious risks associated with natural bodies of water.

 Public Duty Doctrine. Under RCW 4.96.010, municipal corporations are liable for damages arising out of their tortious conduct to the same extent as if they were a private person or corporation. The "public duty doctrine" provides that in order for one to recover from a municipal corporation in tort, it must be shown the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public

in general. *Bailey v. Town of Forks*, 108 Wn.2d 262, 265-66, 737 P.2d 1257, 753 P.2d 523 (1987) (citing *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 303, 669 P.2d 468, 41 A.L.R.4th 86 (1983), *overruled on other grounds, Taylor v. Stevens County*, 111 Wn.2d 159, 759 P.2d 477 (1988)). Absent a showing of the duty running to the injured plaintiff, no liability will be imposed. *Bailey*, 108 Wn.2d at 266.

The trial court found the legislative intent and failure to enforce exceptions to the public duty doctrine were implicated in this case. Under the legislative intent and failure to enforce exceptions, a special duty of care is owed to a particular plaintiff or limited class of potential plaintiffs (1) when the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons (legislative intent); and (2) where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute intended to protect (failure to enforce). *Bailey*, 108 Wn.2d at 268.

Legislative Intent Exception. Mr. Ravenscroft asserts the County is liable under the legislative intent exception because the statutes and ordinances relating to boating clearly set forth an intent to protect the particular and circumscribed class of recreational boaters. Legislative intent will not be inferred in the absence of express language. *Johnson v. State*, 77 Wn. App. 934, 894 P.2d 1366, *review denied*, 127 Wn.2d 1020 (1995). In determining whether the terms of the statute clearly evinces a duty, the court evaluates public policy considerations. *Bailey*, 108 Wn.2d at 267. "Major public policy considerations" have caused courts to decline to infer legislative intent in the absence of explicit legislative direction. *Johnson*, 77 Wn. App. at 938. Where statutory language indicates it is primarily aimed at protecting the public, the legislative intent exception does not apply. *Taylor*,

111 Wn.2d at 163 (Utter, J., concurring); *Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. 523, 532, 871 P.2d 601, *review denied*, 124 Wn.2d 1029 (1994).

■ In this case, the relevant statutes and ordinances all refer to recreational boaters. Recreational boaters are not a particular circumscribed class, but instead are the public. Without explicit statutory language regarding legislative intent, the legislative intent exception is not applicable. The trial court's determination that the legislative intent exception is applicable is reversed.

■ Failure to Enforce Exception. Under the failure to enforce exception to the public duty doctrine, a general duty of care owed to the public can be owed to an individual where (1) government agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation; (2) they fail to take corrective action; (3) a statutory duty to take corrective action exists; and (4) the plaintiff is within the class the statute intended to protect. *Smith v. State*, 59 Wn. App. 808, 814, 802 P.2d 133 (1990), *review denied*, 116 Wn.2d 1012 (1991).

■ ■ The plaintiff has the burden of establishing each element of the exception. *Atherton Condo. Apartment-Owners Ass'n Bd. v. Blume Dev. Co.*, 115 Wn.2d 506, 531, 799 P.2d 250 (1990). This exception is construed narrowly. *Atherton*, 115 Wn.2d at 531. In order to invoke this exception, the statute must contain a specific duty to take corrective action. *See, e.g., Bailey*, 108 Wn.2d 262 (statute provided police officer "shall" take into custody a person incapacitated by alcohol); *Campbell v. City of Bellevue*, 85 Wn.2d 1, 530 P.2d 234 (1975) (statute provided building official "shall immediately sever any unlawfully made connection"). In other words, a specific directive to the governmental employee as to what should be done must be present in the statute.

■ Statutes generally indicating the agency "may" take corrective action or investing broad discretion in the agency will not meet this requirement. For instance, in

*McKasson v. State*, 55 Wn. App. 18, 25, 776 P.2d 971, *review denied*, 113 Wn.2d 1026 (1989), the court ruled the Securities Act does not require specific action because it granted broad discretion with the director utilizing the word "may" instead of "shall." *See also Forest v. State*, 62 Wn. App. 363, 369-70, 814 P.2d 1181 (1991).

■ The statutes and ordinances at issue here do not contain the language necessary to invoke the failure to enforce exception to the public duty doctrine. The Boating Safety Program Approval (WAC 352-65) and the Uniform Waterway Marking System (WAC 352-66) both contain directives relating to establishing various programs, including safety and education programs, and relating to the uniform marking of signs and buoys in the water. However, neither provision contains specific directives as to exactly which hazards must be marked. Nor does either provision direct corrective action when the buoys or markers are not in place or are removed where a hazard is present. Such language is also lacking from the statute containing the powers and duties relating to the Parks and Recreation Commission and boating safety education. RCW 43.51.400. In the absence of a directive to undertake specific corrective action, the failure to enforce exception does not apply. *Forest*, 62 Wn. App. at 371. As a matter of law, the failure to enforce exception does not apply to the present circumstances and the trial court's ruling to the contrary is reversed.

Cooperative Agreement. By the terms of the cooperative agreement between the State of Washington and the County, the State provided funding for Spokane County boating safety, education and law enforcement programs in exchange for the County's agreement to participate in the programs. Mr. Ravenscroft argues that this agreement creates affirmative duties for the County relative to the boating public. Specifically, he asserts he has a third party beneficiary claim against the County for breach of that agreement.

In response, the County states that the source of its

responsibility for boating safety and law enforcement is not this agreement with the State, which it characterizes as a funding arrangement, but State laws and local ordinances regulating boating. The County notes that the cooperative agreement refers to these laws and identifies them as the authority for the agreement. When the County enforces boating laws and provides boating safety and education programs, it does so not because it receives funding from the State in exchange for its promise to do so, but because it is a municipality acting pursuant to specific statutory authority for the general welfare of its citizens. As such, the County argues that it is protected from liability by the public duty doctrine.

Generally, a breach of contract does not give rise to an action in tort. However, the negligent performance of a contract may create a tort claim if a duty exists independently of the performance of that contract. *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 230, 797 P.2d 477 (1990). Although we assume without deciding that Mr. Ravenscroft is a third party beneficiary and that he could recover for personal injuries in a breach of contract action, we find that this claim is barred by the public duty doctrine. A negligence action must be based on a duty owed by the defendant to the plaintiff. In this case, the duties imposed upon the County by the cooperative agreement are pursuant to State and municipal laws that impose duties owed to the public as a whole and not to particular individuals.

Premises Liability Claim. Mr. Ravenscroft contends the trial court erred in dismissing his premises liability claim because a question of fact exists regarding whether the County was a possessor of land who owed a duty of reasonable care to public invitees. Where an individual visits a state recreational area, his or her status under common-law principles is irrelevant because both his status as a "recreational user" and the government agency's duty to such users are defined by the recreational use statute. *Bernstein v. State*, 53 Wn. App. 456, 462, 767

418

P.2d 958, *review denied*, 112 Wn.2d 1024 (1989); *see also Van Dinter v. City of Kennewick*, 64 Wn. App. 930, 935, 827 P.2d 329 (1992), *aff'd*, 121 Wn.2d 38, 846 P.2d 522 (1993). As such, Mr. Ravenscroft's status under common-law principles is irrelevant to this case, and will not sustain a claim against the County or WWP. The trial court's dismissal of the common-law claims is affirmed.

This matter is remanded to the superior court for further proceedings in conformity with this opinion.

SCHULTHEIS, A.C.J., and BROWN, J., concur.

Review granted at 134 Wn.2d 1018 (1998).