[No. 24849-2-II.   Division Two.   January 12, 2001.]

BREMERTON PUBLIC SAFETY ASSOCIATION, *Appellant*, v. THE CITY OF BREMERTON, *Respondent*.

*Randy W. Loun* (of *Loun & Tyner*), for appellant.

*Glenna L. Malanca, City Attorney*, and *David B. St. Pierre, Assistant*, for respondent.

BRIDGEWATER, J. — Bremerton Public Safety Association (BPSA) appeals a grant of summary judgment in favor of the City of Bremerton (City). We hold that RCW 41.26.150 unambiguously authorizes the City to deduct medical costs payable under Part B Medicare (Medicare B) coverage from the amounts it must pay for a retiree's medical services, even if the retiree did not apply or pay premiums for this coverage. Therefore, we affirm.

BPSA, representing members of the Law Enforcement and Fire Fighters Retirement Plan I (LEOFF I), brought an action seeking declaratory judgment to establish that the City could not require LEOFF I retirees to pay for Medicare B or reduce their medical coverage by the City by the amount Medicare B would have paid.

BPSA moved for partial summary judgment on the issue of the City's obligation to pay costs for necessary medical services under RCW 41.26.150, in light of Medicare B coverage. BPSA argued that RCW 41.26.150 obligates the City to pay the retirees' premiums for coverage under Medicare B, and, therefore, the City was responsible for costs of medical services that Medicare B would cover even if the retiree failed to acquire or purchase this supplement. The City also moved for summary judgment. The court granted the City's motion for summary judgment, ruling that RCW 41.26.150(2) does not obligate the City to pay a retiree's Medicare B premiums. BPSA appeals.

██ We review an order of summary judgment de novo. *Enter. Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551, 988 P.2d 961 (1999); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admis-

sions on file demonstrate the absence of any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider the facts and the inferences from the facts in a light most favorable to the nonmoving party. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998); *Wilson*, 98 Wn.2d at 437.

Both parties argued below and assert on appeal that there are no issues of material fact barring an order of summary judgment. The parties disagree only regarding the superior court's interpretation of the medical expense statute, RCW 41.26.150. Statutory construction is a question of law, which we review de novo. *Enter. Leasing*, 139 Wn.2d at 551-52.

BPSA argues that RCW 41.26.150 is ambiguous as to whether an employer may reduce a retiree's payable medical expenses by the amount of Medicare B coverage whether or not the retiree pays the premium. We interpret statutes to give effect to the legislature's intent. *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). To determine legislative intent, we look first to the language of the statute. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). If a statute is unambiguous, we may derive its meaning from the language of the statute alone. *Cherry*, 116 Wn.2d at 799. We read each provision of the statute in relation to the other provisions. *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000); *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 133, 814 P.2d 629 (1991).

In ascertaining the meaning of a particular word in a statute, a court must consider both the statute's subject matter and the context in which the word is used. *Chamberlain v. Dep't of Transp.*, 79 Wn. App. 212, 217, 901 P.2d 344 (1995). We give undefined statutory terms their usual and ordinary meaning unless there is contrary legislative intent. *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 479-80, 745 P.2d 1295 (1987); *see also Nationwide Ins. v. Williams*, 71 Wn. App. 336, 342, 858 P.2d 516 (1993), *review denied*, 123 Wn.2d 1022 (1994). We may look to a dictionary

for an undefined term's ordinary meaning. *Gerberding v. Munro*, 134 Wn.2d 188, 199, 949 P.2d 1366 (1998); *Port of Seattle v. Dep't of Revenue*, 101 Wn. App. 106, 115, 1 P.3d 607 (2000).

Moreover, the first rule of judicial interpretation of statutes is that the court assumes that the legislature means exactly what it says; plain words do not require construction. *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 608-09, 998 P.2d 884 (2000). We do not construe unambiguous statutes. *W. Telepage*, 140 Wn.2d at 608; *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). While a statute is ambiguous if it is susceptible to two or more reasonable interpretations, we are not obliged to discern an ambiguity by imagining a variety of alternative interpretations. *State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999). A court may not add language to a clear statute, even if it believes the Legislature intended something else but failed to express it adequately. *State v. Chester*, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997). We are not free to disregard the plain meaning of the statute to avoid an incongruous result. *McFreeze Corp. v. Dept. of Revenue*, 102 Wn. App. 196, 201, 6 P.3d 1187 (2000). Thus, when reading an unambiguous statute we look to the wording of the statute, not to outside sources. *W. Telepage*, 140 Wn.2d at 609; *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 582, 790 P.2d 124 (1990).

RCW 41.26.150(1)[1] requires an employer to pay a retired LEOFF I member's "necessary medical services not payable from some other source," as provided for in RCW

---

[1] RCW 41.26.150(1) provides in relevant part:

Whenever any active member, or any member hereafter retired, on account of service, sickness, or disability, not caused or brought on by dissipation or abuse, of which the disability board shall be judge, is confined in any hospital or in home, and whether or not so confined, requires medical services, *the employer shall pay for the active or retired member the necessary medical services not payable from some other source as provided for in subsection (2) of this section.*

(Emphasis added.) RCW 41.26.030(22) provides a list of "medical services."

41.26.150(2). This coordination of coverage provision provides:

> (2) The medical services payable under this section *will be reduced by any amount received or eligible to be received* by the member under workers' compensation, social security including the changes incorporated under *Public Law 89-97*, insurance provided by another employer, other pension plan, or any other similar source. *Failure to apply for coverage if otherwise eligible under the provisions of Public Law 89-97 shall not be deemed a refusal of payment of benefits thereby enabling collection of charges under the provisions of this chapter.*

RCW 41.26.150(2) (emphasis added).

"Public Law No. 89-97" refers to the federal Medicare program. Public Law No. 89-97 established, among other programs, the federally funded Medicare health care program. Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 291 (Title VII) (codified as amended at 42 U.S.C. §§ 1395-1395ccc). Eligibility for Medicare benefits is based on age or disability: an individual must be at least 65 years old or disabled to be eligible. 42 U.S.C. §§ 426(a-b), 1395c. Medicare coverage is primarily divided into two parts. *See generally*, *Witherspoon v. St. Paul Fire & Marine Ins. Co.*, 86 Wn.2d 641, 644, 548 P.2d 302 (1976). Part A covers all inpatient hospital expenses through an insurance plan. 42 U.S.C. §§ 1395c to 1395i-4. Part A is generally provided to persons over the age of 65 meeting the other requirements of 42 U.S.C § 1395c at no premium to the individual. Part A coverage is not in dispute in this case. Part B offers supplementary medical insurance covering certain physician services, hospital outpatient services, and other health services not covered under Part A. 42 U.S.C. §§ 1395j to 1395w-4(j). Part B coverage is not freely available to all Medicare-eligible patients. Medicare-eligible patients must first enroll in the Part B insurance program by paying insurance premiums. 42 U.S.C. §§ 1395o-1395s.

Under RCW 41.26.150(2), therefore, costs of a retiree's necessary medical services are reduced by "any amount received or eligible to be received" under Medicare. BPSA

argues that RCW 41.26.150(2) is ambiguous as to when a retiree is "eligible to receive" these benefits. It urges that we apply methods of statutory construction to find that payments for Medicare B benefits are not "eligible to received" until the retiree has signed up for the program and paid premiums. But "eligible" means "qualified." WEBSTER's II COLLEGE DICTIONARY (1999), at 365. The plain language of the statute requires, therefore, that necessary medical costs payable by the employer are reduced by any amount for which a retiree is qualified to receive under Medicare.

Moreover, the last sentence of RCW 41.26.150(2) makes clear that an individual who has "failed to apply for" Medicare "if otherwise eligible" may not receive amounts for necessary medical costs from the employer which are generally covered by Medicare. Failure to apply for Medicare does not place a retiree in the same position as a retiree who has been denied payment of benefits from Medicare or the other sources listed in RCW 41.26.150(2). In the context of health insurance, an ordinary person would understand "apply" to mean make a formal request, probably by filling out a form, for coverage by the provider. And, as stated above, "otherwise eligible" means "otherwise qualified." Failure to apply for Medicare coverage does not trigger an employer's obligation, unlike a denial or refusal of payment of benefits from other sources. Therefore, an employer is still entitled to offset its costs for necessary medical services by amounts Medicare B normally pays, even if a retiree has failed to make a formal application for Medicare.

BPSA argues that the City wants this court to equate "apply" with "purchase" or "to acquire." BPSA urges this court to equate "apply" with "make use of" or "put into effect," such that the last sentence of RCW 41.26.150(2) means that a retiree must use Medicare when an employer has provided that coverage, but not that a retiree must apply for Medicare B or risk paying potentially covered medical expenses. Neither of these definitions gives the ordinary meaning of "apply" in this context; even the

dictionary BPSA cites defines "apply" as: "to make an appeal or a request esp. formally and often in writing and usu. for something of benefit to oneself." WEBSTER'S 3RD NEW INTERNATIONAL DICTIONARY. Clerk's Papers at 59. The statute reads "apply *for* coverage," not "apply coverage," or "apply *existing* coverage." BPSA's reading ignores the preposition "for" and inserts the word "existing."

The last sentence of RCW 41.26.150(2) means exactly what it says: a retiree's failure to request Medicare coverage is not the equivalent of being denied benefits under existing Medicare coverage, which would otherwise obligate the City to pay those medical expenses. If a retiree is denied benefits under existing coverage from other sources, the City is responsible to pay those medical costs; if a retiree fails to apply for coverage, the City is responsible to pay only those necessary medical costs not potentially covered by Medicare—i.e., those amounts not "payable from some other source." RCW 41.26.150(1).

BPSA also argues that under the statutory purpose of RCW 41.26.150, the City is solely responsible for "necessary medical services" of the retiree, and, therefore, the City cannot obligate the retiree to pay Medicare premiums. But the statute clearly provides otherwise. First, RCW 41.26.150(1) provides that the employer pay *only* necessary Medicare services for the retiree that are *not* payable from another source listed in RCW 41.26.150(2). Subsection (2) specifically includes Medicare in its list of examples of other sources of benefits. Second, the last sentence of RCW 41.26.150(2) specifically provides that failure to apply for coverage if otherwise eligible under Medicare is not the equivalent of a refusal of payment of benefits; therefore, failure to apply for Medicare B coverage does not entitle the retiree to payment from the City of those expenses. Third, RCW 41.26.150(5)[2] specifically provides that whether an

---

[2] RCW 41.26.150(5) provides:

Any employer under this chapter *may, at its discretion,* elect to reimburse a retired former employee under this chapter for premiums the retired former employee has paid for medical insurance that supplements Medicare, including

employer pays a retiree's Medicare B premium coverage is "discretionary," not obligatory. The statute is unambiguous and, thus, we need not resort to methods of statutory construction.[3]

In conclusion, the City has the discretion to pay or not to pay the Medicare B premiums for the retiree.[4] And the City may offset medical costs payable under Medicare B coverage from its payments for a retiree's medical services, even if the retiree did not apply or pay premiums for the coverage.

Affirmed.

HOUGHTON, J., and ALEXANDER, J. Pro Tem., concur.

premiums the retired former employee has paid for Medicare part B coverage. (Emphasis added.)

[3] The case cited by BPSA is inapposite because the Pennsylvania Supreme Court found the term "eligible" to be ambiguous in the Pennsylvania pension statute. *DeLellis v. Borough of Verona*, 541 Pa. 3, 660 A.2d 25, 28 (1995). Our statute is not ambiguous.

[4] Because we hold that the plain language of RCW 41.26.150 entitled the City to offset Medicare B expenses, we do not reach BPSA's alleged evidentiary error regarding an unsigned opinion from the Attorney General. We have not relied upon this letter opinion in reaching our result.