121 P.3d 1204 (2005)
Ratilal M. SHAH and Lalita Shah, husband and wife, and the marital community comprised thereof, Appellants,
v.
ALLSTATE INSURANCE COMPANY, a foreign corporation, Defendant, and
Jerry Ljunggren Financial Services, Inc., a Washington corporation, and Jerry D. Ljunggren and Sherry Ljunggren, husband and wife, and the marital community comprised thereof, Respondents.
No. 55232-5-I.
Court of Appeals of Washington, Division 1.
September 12, 2005.
Publication Ordered October 25, 2005.
*1205 Howard T. Hall, Wolfstone Panchot & Bloch PS, Seattle, WA, for Appellants.
Patrick N. Rothwell, Davis Rothwell Earle & Xochichua PC, Seattle, WA, for Respondents.
APPELWICK, J.
¶ 1 Ratilal and Lalita Shah appeal the trial court's dismissal of their case on summary judgment. The Shahs bought property, obtained a loan from Washington Mutual Bank (Washington Mutual) to pay for the property, and then obtained insurance on the property from Jerry Ljunggren, an agent with Allstate Insurance Company. The property burned down several years later, and although the Shahs were paid the limit of the policy, replacement of the home would have cost significantly more. The Shahs claim that Ljunggren was negligent because he underinsured the property, relied on incorrect information when creating the policy, and did not inform the Shahs of possible uninsured exposures. The Shahs also claim that Ljunggren negligently misrepresented to them that the policy was a replacement value policy, and that he violated the Consumer Protection Act. We reverse and remand.

*1206 FACTS
¶ 2 In February 2000, Ratilal and Lalita Shah agreed to buy a house in Bellevue for $760,000, for use as a rental property. Mrs. Shah has been a real estate agent for over 25 years, and the Shahs have bought numerous properties. Washington Mutual agreed to lend the Shahs $400,000 to buy the property. In conjunction with the loan, Washington Mutual required the Shahs to buy an insurance binder for the property.
¶ 3 The Shahs contacted Jerry Ljunggren, an Allstate agent with whom they had worked before, to get the binder. Mr. Shah testified that he told Ljunggren to send Washington Mutual whatever they needed, and that he relied on Ljunggren to comply with the bank's requirements. Washington Mutual faxed Ljunggren an appraisal of the property. The appraisal estimated the site value of the property as $480,000. The appraisal also estimated the cost to replace the improvements on the property new as $318,230. The appraisal estimated the total value of the property, using the cost approach, as $760,995.
¶ 4 Washington Mutual also provided to Ljunggren the form requesting the binder, which stated, among other things, that "[t]he coverages designated are the MINIMUMS required by Washington Mutual Bank." The form did not specify how much coverage was required or whether the coverage was to be replacement coverage.[1]
¶ 5 Ljunggren entered information from the appraisal and information he had pulled from the property's title records into the Allstate Cost Estimator (ACE) program, which generated an insurance value of $307,000. However, although the appraisal said that the house was about 3,771 square feet, including the basement, Ljunggren entered the home into the ACE as having only 2,070 square feet. Later Ljunggren met with the Shahs to go over the policy and the application. Ljunggren testified that he does not know how the ACE program generates insurance values. Ljunggren also testified that it is not his practice to ask lenders what their requirements are, only to use the ACE to determine the insurance values.
¶ 6 Mr. Shah testified that in fall 2002, he was shopping around for insurance quotes from different companies, and he received a quote for a $700,000 policy on the property from another insurance company. Mr. Shah asked Ljunggren in October 2002 why the policy amount on the property was so low. Mr. Shah testified that Ljunggren told him not to worry, that he had replacement value.
¶ 7 The home burned down in November 2002. Allstate paid the Shahs about $330,000, which included the $307,000 policy limit and some additional money for debris removal and land damage. The total cost to rebuild the property was estimated anywhere between $513,675 and $589,350. The Shahs decided not to rebuild and sold the vacant land in spring 2003.
¶ 8 Alleging that they did not have adequate insurance coverage for the property, the Shahs filed suit against Ljunggren and Allstate in November 2003, and amended their complaint in September 2004. The Shahs claimed that Ljunggren was negligent in not placing adequate coverage on the property and failing to advise the Shahs of uninsured exposures. Specifically, the Shahs alleged that the insurance level set by Ljunggren did not meet Washington Mutual's minimum requirements. The Shahs also alleged negligent misrepresentation and Consumer Protection Act violations, among several other claims.
¶ 9 Ljunggren and Allstate moved for summary judgment, and the trial court granted the motion. The court assumed Ljunggren breached a duty for purposes of the summary judgment motion. But the court found as a matter of law that, since the Shahs knew what the policy limit was and had real estate knowledge, they did not rely on Ljunggren with respect to the negligent misrepresentation claim. The trial court also found that as to the other tort claims, "there is no demonstration of a proximate cause because of the *1207 intervening judgment and business decision of the plaintiff."

ANALYSIS

I. Negligence Claim
¶ 10 The Shahs claim that the trial court erred in dismissing their negligence claims. The Shahs allege that the trial court erroneously concluded as a matter of law that Ljunggren's acts were not the proximate cause of the Shahs' loss. They claim that reasonable minds could have interpreted the evidence differently.
¶ 11 We review an appeal of a summary judgment de novo. Castro v. Stanwood School Dist. No. 401, 151 Wash.2d 221, 224, 86 P.3d 1166 (2004). A summary judgment motion can only be sustained if there is no genuine issue of material fact, looking at all evidence and inferences in the light most favorable to the nonmoving party. Pelton v. Tri-State Mem'l Hosp., Inc., 66 Wash.App. 350, 354, 831 P.2d 1147 (1992). Proximate causation is generally an issue for the fact finder. Attwood v. Albertson's Food Ctrs., Inc., 92 Wash.App. 326, 330, 966 P.2d 351 (1998). Proximate cause has two elements: factual cause and legal cause. Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 474, 951 P.2d 749 (1998). While factual cause is based on an actual connection between an act and an injury, "legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." Schooley, 134 Wash.2d at 478, 951 P.2d 749.
¶ 12 In the Shahs' amended complaint, they alleged that Ljunggren was negligent because he failed to follow the Shahs' instructions to place coverage that met Washington Mutual's minimum coverage requirements. They also alleged he was negligent in failing to advise them as to possible uninsured exposures. The Shahs further allege that Ljunggren breached his duty by using incorrect information to create the quote, and by using a software program that he could not explain, so that the Shahs were unable to make an informed decision. While agreeing with the Shahs for the purposes of summary judgment that Ljunggren may have breached his duty, the trial court ruled against the Shahs on the issue of causation:
[I]t's enough to analyze the factual record in this case which demonstrates to the court that there cannot be any reliance on this factual record that the statements "don't worry", is puffery and given the stated knowledge of this insured about the limit and this insured's knowledge about the amount it would cost to replace it, I'm deciding as a matter of law there can be no reliance or as to the other tort claim that there is no demonstration of a proximate cause because of the intervening judgment and business decision of the plaintiff.
The trial court ruled that under the facts at hand, there was no causation as a matter of law.
¶ 13 The trial court erred when it held that the Shahs' intervening actions negated proximate cause as a matter of law. There is a genuine issue of material fact as to whether the Shahs actually knew they had inadequate coverage and whether they made a conscious choice to keep their coverage low. Reasonable minds could find that the Shahs trusted Ljunggren's policy to be adequate. Thus, the Shahs' negligence claims cannot be dismissed based on this imputed business decision. At the summary judgment stage the claims must be analyzed with all reasonable inferences given to the Shahs.
¶ 14 There is a genuine issue of material fact as to whether Ljunggren was negligent in failing to follow the Shahs' instructions to meet Washington Mutual's minimum requirements. The Shahs produced the declaration of J. Kay Thorne, an insurance underwriter, who stated that Ljunggren's failure to determine and meet Washington Mutual's minimum requirements breached the standard of care for insurance agents in Washington. There is a genuine issue of fact as to whether this breach caused the Shahs' damages.[2] It *1208 is unclear from the record what the amount of insurance on the property would have been had Ljunggren met Washington Mutual's minimum requirements. The appraisal that Ljunggren received from Washington Mutual estimated the reproduction cost of the improvements at $318,230. If Ljunggren had placed the amount of insurance at $318,230 or another amount above $307,000, in accordance with Washington Mutual's requirements, then the Shahs would have had a higher limit and would have been paid more. Thus, summary judgment was inappropriate.
¶ 15 Further, there was a genuine issue of material fact as to whether Ljunggren's use of allegedly incorrect property information and his failure to verify this information with the Shahs was negligent. Thorne stated that these actions breached the standard of care for an insurance agent. It is unclear from the record whether the information that Ljunggren entered into the ACE was incorrect  he did provide that the home was a one-story home with an 80 percent finished basement, which is in accordance with what the appraisal said. However, he only provided that the home had 2,070 total square feet, but the appraisal listed the first floor as having 1,969 square feet, and the basement as having 1,802 square feet for a total of 3771 square feet. Further, after the fire, Allstate adjusters described the home as a two-story home with approximately 4,000 square feet. At summary judgment, we must make all inferences in favor of the Shahs and assume that the information was incorrect. If the information was incorrect and Ljunggren breached a duty in entering that information and failing to verify it, there is a genuine issue of material fact as to whether his breach caused the underinsurance, and thus, the Shahs' loss. The policy amount might have been higher and the Shahs' loss lessened if correct information had been entered. Summary judgment was inappropriate.
¶ 16 There is also a genuine issue of material fact as to whether Ljunggren was negligent in failing to advise the Shahs that they had inadequate coverage. Thorne's declaration states that an insurance agent has a duty to advise clients of possible uninsured exposures. There is an issue of fact as to whether Ljunggren breached this duty by not telling the Shahs that their property was insured for a much lower amount than it would cost to replace it, and then by assuring Mr. Shah that the policy was replacement cost. Further, there is a genuine issue as to whether this failure caused the Shahs to keep their coverage low. The Shahs contend that had they been informed of the true nature of their policy, they would have increased their coverage. There is an issue of material fact as to whether they knew that the coverage they had was inadequate. Summary judgment was inappropriate.
¶ 17 There also may be a genuine issue of material fact as to whether Ljunggren's failure to understand and explain how the ACE worked was negligent. Although Thorne stated that this deficiency was a breach of the standard of care, the Shahs have not produced any evidence to support a claim that Ljunggren's inability to explain exactly how the ACE worked caused their damages. There is no evidence that if Ljunggren understood exactly how the ACE computed the valuations, either alone or in combination with the apparently incorrect square footage used in the computation, and explained the ACE's process to the Shahs that the Shahs would have increased their coverage. But if Ljunggren did not know that the ACE calculated an actual cash value policy and did not explain that to the Shahs, and this failure caused the Shahs to keep the inadequate coverage, there may be causation. Summary judgment on this claim was inappropriate.

II. Negligent Misrepresentation Claim
¶ 18 The Shahs claim that the trial court erred in dismissing their negligent misrepresentation claim. They assert that whether they justifiably relied on Ljunggren was an issue of fact. The Shahs also contend that they produced sufficient evidence to *1209 meet the other elements of their negligent misrepresentation claim.
¶ 19 A person who commits the tort of negligent misrepresentation is
[O]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Lawyers Title Ins. Corp. v. Baik, 147 Wash.2d 536, 545, 55 P.3d 619 (2002) (quoting Restatement (Second) of Torts § 552(1) (1977)). Justifiable reliance means that the "reliance was reasonable under the surrounding circumstances." Baik, 147 Wash.2d at 545, 55 P.3d 619 (quoting ESCA Corp. v. KPMG Peat Marwick, 135 Wash.2d 820, 827-28, 959 P.2d 651 (1998) (emphasis omitted.)) "Whether a party justifiably relied upon a misrepresentation is an issue of fact." ESCA Corp., 135 Wash.2d at 828, 959 P.2d 651.
¶ 20 The trial court erred in holding that no reasonable person could find that there was justifiable reliance. Mr. Shah stated that when he asked Ljunggren why his policy amount was so much lower than quotes given by other insurance companies, Ljunggren told him it was replacement value and not to worry. Mr. Shah also stated that he decided to stay with Allstate because of those assurances. The Shahs produced evidence that Ljunggren had known their family for the past 20 years, and that Ljunggren had created policies for the Shahs' children. They also produced evidence that Ljunggren had previously made recommendations about adequate insurance coverage. Due to the Shahs' long-standing relationship with Ljunggren and their historic reliance upon him for their insurance coverage needs, there is genuine issue of material fact as to whether Mr. Shah's reliance on Ljunggren's statement was justified in this instance.
¶ 21 Because there is a genuine issue of material fact as to whether the Shahs justifiably relied on Lunggren's statement, we remand for trial on the issue. The Shahs have presented evidence on all of the other elements of a claim of negligent misrepresentation. They presented evidence that Ljunggren supplied them with false information: that their policy was for replacement value. They also presented evidence that they suffered a pecuniary loss as a result of the misrepresentation, because they did not get the replacement value of their home. Finally, the Shahs presented a declaration from Thorne that stated that Ljunggren did not act with reasonable care or competence when he made the statement to them.

III. Consumer Protection Act Claim
¶ 22 The Shahs contend that the trial court erroneously dismissed their Consumer Protection Act (CPA) claim against Ljunggren. They assert, as they do with their negligence and negligent misrepresentation claims, that proximate causation is an issue of fact, and that they have satisfied all of the other required elements of the CPA.
¶ 23 The five elements required to establish a violation of the CPA are: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 780, 719 P.2d 531 (1986). The Shahs allege that Ljunggren violated the CPA by not following the Shahs' instructions to comply with Washington Mutual's requirements in creating the policy. The Shahs also contend that Ljunggren's alleged misrepresentation to Mr. Shah, his practice of not following up with lenders regarding insurance requirements, and his practice of using the ACE to generate quotes when he did not know how the program worked, all violated the CPA.
¶ 24 There are genuine issues of fact as to whether Ljunggren has violated the CPA. First, the alleged violations have caused the Shahs injury in their property, because they did not receive the replacement value of the home. By assuring Mr. Shah that he had replacement value, Ljunggren may have caused the Shahs not to raise their limit, which caused damages. Also, by not communicating with Washington Mutual about their *1210 minimums, Ljunggren may have inadequately insured the Shahs' property from the start, causing damages.
¶ 25 The Shahs have also established the prongs of an unfair practice and a practice within trade or commerce. Whether a particular act or practice is unfair or deceptive is a question of law. Potter v. Wilbur-Ellis Co., 62 Wash.App. 318, 327, 814 P.2d 670 (1991). Further, the first two prongs of the CPA test can be established "when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." Hangman Ridge, 105 Wash.2d at 785-86, 719 P.2d 531. The alleged misrepresentation made to Mr. Shah violates RCW 48.30.090, which states that "[n]o person shall make, issue or circulate, or cause to be made, issued or circulated any misrepresentation of the terms of any policy."
¶ 26 In addition, the Shahs have satisfied the public interest prong. The public interest prong may be satisfied per se, if there is "a showing that a statute has been violated which contains a specific legislative declaration of public interest impact." Hangman Ridge, 105 Wash.2d at 791, 719 P.2d 531. Title 48 of the RCW is the insurance code. RCW 48.01.010. RCW 48.01.030 states that:
The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance.
Thus, whether Ljunggren violated RCW 48.30.090 by making a misrepresentation about the Shahs' coverage is a matter of public interest. The dismissal of the Shahs' CPA claims on summary judgment was error.
¶ 27 Reversed and remanded.
WE CONCUR: SCHINDLER and COLEMAN, JJ.
NOTES
[1] During discovery, the Shahs produced a document indicating Washington Mutual's required minimum coverage levels. Washington Mutual did not provide Ljunggren with this document at the time the binder was created, nor did Ljunggren request the document.
[2] We recognize that there may be an issue as to whether the actions that Ljunggren took with respect to Washington Mutual's requirements were the legal cause of the Shahs' injuries. A lender sets insurance minimums for its own protection, not for the protection of the borrower. Further, Washington Mutual finalized the loan, indicating that it was satisfied with the amount of protection that the policy offered. Thus, any damage to the Shahs as a result of the lender's minimums not being met might be too far removed from any duty to meet those minimums, thus negating legal cause. However, the parties did not argue this issue and we decline to decide it on the limited record before us.