# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SOP, LLC, a Washington limited liability company, | No. 56061-5-II |
| Appellant, | |
| v. | |
| DWP GENERAL CONTRACTING, INC., a Washington corporation; GOLD MEDAL GROUP, LLC, a Washington limited liability company; GOLD MEDAL MULTI FAMILY, LLC, a Washington limited liability company; GOLD MEDAL RESIDENTIAL, LLC, a Washington limited liability company; THE GOLD MEDAL DEVELOPMENT GROUP, LLC, a Washington limited liability company; SOP 1 APARTMENTS, LLC, a Washington limited liability company, | UNPUBLISHED OPINION |
| Respondents. | |
| GOLD MEDAL MULTI FAMILY, LLC, a Washington limited liability company, | |
| Third Party Plaintiff Below, | |
| v. | |
| ADVANCED ELECTRIC, INC., a Washington corporation; ALL SEASONS HEATING & COOLING, INC., a Washington corporation; ROBERET BLETCHER d/b/a ALL SEASONS INSULATION; B.O.E. ROOFING, LLC, a Washington limited liability company; CLAYTON S. HARN CONSTRUCTION, INC., a foreign corporation; NEW TECH FRAMERS, LLC, a Washington limited | |

liability company; UNITED CONSTRUC-
TION & REMODELING, INC., a Washington
corporation,

Third Party Defendants Below.

GLASGOW, C.J.—Gold Medal Development Group and Gold Medal Multi Family, owned by Dennis Pavlina, constructed Seasons on the Park Apartments in two phases. SOP LLC bought both phases, discovered construction defects in Phase 2, and sued Gold Medal Development Group, Gold Medal Multi Family, and several other companies owned by Pavlina for breach of construction warranty and negligence. The Pavlina companies moved for summary judgment. SOP requested a CR 56(f) continuance before the hearing in order to conduct more discovery. The trial court denied the continuance and granted summary judgment for the Pavlina companies.

SOP appeals. We affirm the trial court's grant of summary judgment for the Pavlina companies. SOP offered no evidence of a construction warranty and the evidence in the record shows only the opposite—that there was no construction warranty for Phase 2. Additionally, the Pavlina companies owed SOP no independent tort duty to avoid construction defects. Finally, the trial court did not abuse its discretion when it denied the CR 56(f) continuance.

FACTS

A.      Background

Seasons on the Park Apartments is located in Battle Ground, Washington. It was constructed in two phases. Pavlina was involved in the construction while doing business through several entities: SOP 1 Apartments LLC; DWP General Contracting Inc.; Gold Medal Group LLC; Gold Medal Multi Family LLC; and The Gold Medal Development Group LLC.

Stan Kleweno—who at different points owned and sold Phase 1 and Phase 2—did business through Transpacific dK Investments LLC and SPTPI LLC. Transpacific manages SPTPI.

In 2011, BG Village Parcel 6 Apts. LLC, managed by Jerry Nutter, entered a construction contract with Gold Medal Development Group, a Pavlina company, to build Phase 1 of Seasons on the Park Apartments. The construction contract between them warranted that "all of the Work" would be "done in a first class, workmanlike manner . . . with new, quality materials." Clerk's Papers (CP) at 173. Further, it warranted "all work and materials against defects in the material or the workmanship" for one year from the apartments' opening date, unless the defect was "latent, hidden, or not readily observable," in which case the warranty would extend one year from the date of discovery. *Id.*

Phase 2 initially had different ownership. Another Pavlina company, SOP 1, was the original owner of Phase 2, and Gold Medal Multi Family, a third Pavlina company, was the general contractor. According to Pavlina, there was no written contract between SOP 1 and Gold Medal Multi Family regarding the construction of Phase 2.

In September 2012, Transpacific bought Phase 1 from BG Village. The purchase and sale agreement specified that Transpacific would be buying Phase 1 "AS-IS" except for warranties specifically made in the agreement:

> Except for those representations and warranties specifically included in this Agreement: (i) Seller makes no representations or warranties regarding the Property; (ii) Seller hereby disclaims, and Buyer hereby waives, any and all representations or warranties of any kind, express or implied, concerning the Property or any portion thereof, as to its condition, value, compliance with laws, status of permits or approvals, existence or absence of hazardous material on site, occupancy rate or any other matter of similar or dissimilar nature relating in any way to the Property.

3

CP at 184. The agreement also included an addendum with a section addressing "[c]onstruction [i]ssues." CP at 194. The addendum stated, in part, "At Closing, Seller will assign to Buyer all Seller's rights under all construction warranties, appliance warranties, and permits and approvals related to the improvements and on the Property." *Id.*

The addendum to the Phase 1 purchase and sale agreement also included an option to purchase Phase 2 from Pavlina. The option stated that the sale of Phase 2 would occur on the same terms as the sale of Phase 1 to Transpacific. The option agreement provided in part that upon exercise of the option, the sale of Phase 2 would "be on substantially the same terms and conditions as contained in the Phase [1] Purchase Agreement." CP at 196.

In November 2012, Transpacific assigned the purchase and sale agreement for Phase 1— including the option to purchase Phase 2—to SPTPI. Roughly a year and a half later, in July 2014, SPTPI exercised its option to buy Phase 2 from SOP 1. Later that month, SPTPI sold both Phase 1 and Phase 2 to Bryan Bickmore. In October 2014, Bickmore assigned the purchase of Phase 1 and Phase 2 to SOP.

Each of the sales involved purchase and sale language that was substantially the same. Each purchase and sale agreement included the "AS-IS" clause that said, "Except for those representations and warranties specifically included in this Agreement: (i) Seller makes no representations or warranties regarding the Property." CP at 82, 101. Each purchase and sale agreement also contained the addendum language: "At Closing, Seller will assign to Buyer all Seller's rights under all construction warranties, appliance warranties, and permits and approvals related to the improvements and on the Property." CP at 91, 111. Finally, each purchase and sale agreement contained an integration clause, which stated that the agreement put forth "the entire

4

understanding of Buyer and Seller regarding the sale of the Property" and that there were "no verbal or other written agreements" modifying the agreement. CP at 85, 104.

In 2019, SOP owned both Phase 1 and Phase 2. In August of that year, SOP notified several of Pavlina's companies that it had found construction defects in the apartments. SOP listed more than a dozen construction defects, including a lack of proper flashings throughout the building and a lack of insulation in the attic above the living spaces. The next month, SOP sent an additional notice of construction defect to SOP 1.

B.       Procedural History

In December 2019, SOP sued DWP, Gold Medal Development, Gold Medal Multi Family, Gold Medal Group, and Gold Medal Residential for breach of contract and negligence. It alleged that SOP 1 contracted with at least one of the defendants to construct Phase 2, that at least one of the defendants "granted construction warranties to SOP 1 . . . for Seasons on the Park, Phase 2," and that SOP is ultimately "the assignee of the rights of SOP 1 . . . under the Agreement." CP at 14, 18. SOP also alleged that, due to the defendants' negligent conduct, substantial portions of Phase 2 needed repair or replacement to prevent "health concerns related to dry-rot and mold and compromised structural integrity of the building." CP at 20. SOP later filed an amended complaint in which it added SOP 1 as a defendant.

On February 5, 2021, the Pavlina companies moved for summary judgment requesting that the trial court dismiss SOP's claims against them and noted a summary judgment hearing for March 5, 2021. About a week and a half later, on February 17, the parties attended mediation. Shortly after, the Pavlina companies rescheduled the summary judgment hearing. On March 8, SOP filed a response to defendants' motion for summary judgment and a CR 56(f) motion for

continuance. In requesting a continuance, SOP stated that the parties were still in mediation, that they had "agreed not to take depositions before mediation," and that SOP needed to depose Pavlina and Kleweno to "provide evidence of construction warranties on Phase 2." CP at 302. Four days after SOP's filing, the Pavlina companies rescheduled the summary judgment hearing again, postponing the hearing until June 25, 2021.

In the meantime, on April 22, the parties attended another round of mediation. Another two months later, on June 21, the Pavlina companies filed a reply in support of their motion for summary judgment. In their reply, they stated that although they had stipulated to a continuance of their motion for summary judgment more than three months ago, SOP had "undertaken no discovery whatsoever." CP at 311.

The summary judgment hearing took place on June 25. SOP argued that it needed to depose Pavlina, Kleweno, and Nutter to determine "whether the terms of the sale on Phase [2] included construction warranties" and whether the Pavlina companies "either expressly or impliedly" granted it construction warranties for Phase 2. Verbatim Report of Proceedings (VRP) at 15-16. It stated that, under the parties' agreement, "no depositions or substantive discovery or motions [would] take place until the mediation was completed," adding that mediation had ended only the previous day. *Id.* at 11. The Pavlina companies countered that they had moved for summary judgment in early February, that they had mediated the matter twice, and that "there was nothing preventing [SOP] from conducting discovery or from filing an additional CR 56(f) motion for a continuance." *Id.* at 18.

The trial court denied the request for a continuance. The trial court also granted the Pavlina companies' motion for summary judgment.

ANALYSIS

I. MOTION FOR SUMMARY JUDGMENT

A.      Breach of Contract Claim

SOP argues that the construction warranties Gold Medal Development Group granted BG Village on Phase 1 transferred through the chain of assignments to SOP on Phase 2. We disagree.

This court reviews a trial court's grant of summary judgment de novo, performing "the same inquiry as the trial court." *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 64, 316 P.3d 469 (2013). Summary judgment is proper where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "All facts and reasonable inferences are considered in a light most favorable to the nonmoving party." *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784, 30 P.3d 1261 (2001). However, the nonmoving party "may not rest upon the mere allegations or denials of a pleading." CR 56(e). Rather, its response "must set forth specific facts showing that there is a genuine issue for trial." *Id.*

When interpreting a written contract, a court's primary task is determining the parties' intent. *Barton v. Dep't of Transp.*, 178 Wn.2d 193, 209, 308 P.3d 597 (2013). A court determines "the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Thus, we "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* at 504. Additionally, when a party assigns a contract to another party, the "'assignee steps into the shoes of the assignor, and has all of the rights of the assignor.'" *Mut. of Enumclaw*

*Ins. v. USF Ins.*, 164 Wn.2d 411, 424, 191 P.3d 866 (2008) (quoting *Est. of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 495, 844 P.2d 403 (1993)).

Here, the record shows that there were no construction warranties for Phase 2. According to Pavlina, Gold Medal Multi Family built Phase 2 for SOP 1 without entering a written contract, and SOP offers no evidence contradicting his statement. When SOP 1 sold Phase 2 to SPTPI, the purchase and sale agreement explicitly stated that SOP 1 made no warranties regarding the building and that the agreement contained "the entire understanding" of the parties. CP at 85. While the addendum stated that SOP 1 would assign SPTPI all its rights under all construction warranties, nothing in the record indicates that SOP 1 had any construction warranties to assign. And when SPTPI sold Phase 2 to Bickmore, the purchase and sale agreement language was substantially the same: SPTPI made no warranties, the agreement set out the parties' entire understanding, and SPTPI assigned all of its rights under all construction warranties—that is, none. Thus, when Bickmore subsequently assigned the purchase of Phase 2 to SOP, SOP received no warranties.

In arguing that construction warranties for Phase 2 existed, SOP points to the addendum to the purchase and sale agreement between BG Village and Transpacific for Phase 1. It contends that the Phase 2 option language, which stated that the sale of Phase 2 would occur on the same terms as the sale of Phase 1, had the effect of adopting for Phase 2 the same construction warranties that Gold Medal Development Group provided for Phase 1. However, the addendum did not go that far. First, the purchase and sale agreement expressly limited warranties. It stated, "Except for those representations and warranties specifically included in this Agreement . . . Seller makes no representations or warranties regarding the Property." CP at 184. Second, the addendum stated in

part, "At Closing, Seller will assign to Buyer all Seller's rights under all construction warranties, appliance warranties, and permits and approvals related to the improvements and on *the* Property." CP at 194 (emphasis added). Thus, the option provided that the purchase and sale for Phase 2 would also assign to the buyer all preexisting warranties related to improvements on Phase 2. SOP does not explain how this language transforms warranties made for Phase 1 into warranties for Phase 2.

Viewing the evidence in the light most favorable to SOP, it has offered no evidence to contradict Pavlina's sworn statement that there was no construction contract and no warranties given for Phase 2. Considering the plain language of the relevant purchase and sale agreements we have before us, we hold that the trial court properly dismissed SOP's breach of contract claim on summary judgment.

B.     Negligence

SOP contends that construction defects in Phase 2 led to moisture damage, and that it is "facing extensive repairs to the decks, siding, [and] attics, among other parts" as a result. Br. of Appellant at 7. Relying on *Assurance Co. of America v. Premium Construction Group, Inc.*, No. C11-1662 MJP, 2012 WL 1856504 (U.S.D.C. W.D. Wash. May 21, 2012), SOP argues that it "pled a proper claim for negligence" rather than a claim for negligent construction. *Id.* at 12. The Pavlina companies counter that "the economic loss rule operates to bar recovery for an alleged breach of tort duties where a contractual relationship existed and the losses are purely economic." Br. of Resp'ts at 19. We conclude the trial court properly granted summary judgment dismissing the negligence claim.

As an initial matter, the economic loss rule is no longer the correct analysis. Where a court must determine whether a plaintiff is limited to contract remedies or whether they may recover in tort, "the court's task is not to superficially classify the plaintiff's injury as economic or noneconomic." *Affil. FM Ins. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 449, 243 P.3d 521 (2010) (lead opinion). Rather, the court must apply the independent duty doctrine. *Id.* (lead opinion); *id.* at 462-63 (Chambers, J., concurring) (explaining that the court adopted the independent duty doctrine to replace the economic loss rule).

The independent duty doctrine "bars recovery in tort for economic losses suffered by parties to a contract unless the breaching party owed a duty in tort independent of the contract." *Pointe at Westport Harbor Homeowners' Ass'n v. Eng'rs Nw., Inc., P.S.*, 193 Wn. App. 695, 702-03, 376 P.3d 1158 (2016). "'The test is not simply whether an injury is an economic loss arising from a breach of contract, but rather whether the injury is traceable also to a breach of a tort law duty of care arising independently of the contract.'" *Id.* at 703 (quoting *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 394, 241 P.3d 1256 (2010)).

In *Eastwood v. Horse Harbor Foundation, Inc.*, the court held that despite remedies available under a lease, the owner of a horse farm could recover tort damages from a nonprofit organization that leased a portion of the farm. 170 Wn.2d at 399-400 (lead opinion); *id.* at 418 (Chambers, J., concurring) (agreeing that the owner could recover tort damages). Although the lease contained covenants obligating the organization to return the farm in good condition, the organization let the farm fall into significant disrepair. *Id.* at 383. The court concluded that "the duty to not cause waste is a tort duty that arises independently of a lease agreement." *Id.* at 399

(lead opinion); *id.* at 417 (Chambers, J., concurring) ("The duty not to commit waste is and always has been independent of and in addition to any duties assumed by contractual lease covenants.").

In the construction context, a party owes a duty in tort independent of the contract where it creates a defect that causes a significant safety risk and its professional role puts it "in the best position to prevent harm." *See Affiliated*, 170 Wn.2d at 453 (lead opinion); *id.* at 461 (Chambers, J., concurring) ("This court has long recognized that engineers have a duty to exercise reasonable skill and judgment in performing engineering services."); *Pointe*, 193 Wn. App. at 704-05. For example, in *Affiliated*, the Supreme Court held that where a fire on the Seattle monorail caused the monorail's operating company to lose millions of dollars, the operating company could bring a tort action against an engineering firm for negligently causing the fire. 170 Wn.2d at 456-57 (lead opinion); *id.* at 461 (Chambers, J., concurring with the lead opinion in result). The court reasoned that, although the record did not indicate whether any passengers were injured, a "fire on these trains is a severe safety risk, highlighting the interest in safety that is at stake when engineers do their work." *Id.* at 453 (lead opinion). Likewise, in *Pointe*, this court held that an engineering firm owed an independent duty to a developer and members of a condominium complex "to take reasonable care to design a building that did not present safety risks to its residents or their property." 193 Wn. App. at 705. In *Pointe*, "the structural engineering . . . led to the defects that rendered the building dangerously unsafe in a large seismic event." *Id.* at 700.

In contrast, a party does not owe a duty in tort independent of the contract where the construction defect simply affects a structure's quality. *Eastwood*, 170 Wn.2d at 392 (lead opinion); *id.* at 413 (Chambers, J., concurring) (reasoning that a contrary rule would allow a "subsequent purchaser, even knowing of the defect and benefiting from an initially low purchase

price," to "sue the builder-vendor for negligent construction"). For example, in *Stuart v. Coldwell Banker Commercial Group, Inc.*, a condominium homeowners' association sued a builder-vendor in tort due to defects in the condominium's decks and walkways that "led to rotting and the substantial impairment of the structures." 109 Wn.2d 406, 411, 745 P.2d 1284 (1987). Explaining its holding in *Stuart* in terms of the independent duty doctrine, *Eastwood* stated that the *Stuart* court had "refused to recognize a tort duty to avoid defects in quality, lest builder-vendors 'become the guarantors of the complete satisfaction of future purchasers.'" 170 Wn.2d at 392 (lead opinion) (quoting *Stuart*, 109 Wn.2d at 421); *id.* at 412 (Chambers, J., concurring) (quoting *Stuart* for the same proposition); *see also Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 827, 881 P.2d 986 (1994) (noting "the importance of the precise allocation of risk as secured by contract" in the construction industry).

Similarly, in *Atherton Condominium Apartment-Owners Association v. Blume Development Co.*, condominium owners sued a developer after portions of the exterior walls of their condominium complex "began to crack and fall off." 115 Wn.2d 506, 512, 799 P.2d 250 (1990). As explained in *Eastwood*, the *Atherton* court held that the owners could not recover under a theory of negligent construction because the developer "did not owe an independent tort duty to avoid defects in construction quality." *Eastwood*, 170 Wn.2d at 391.

We hold that the trial court properly dismissed SOP's negligence claim on summary judgment because, as a matter of law, the Pavlina companies owed SOP no independent tort duty to avoid construction defects in Phase 2. SOP alleges that the defects have caused it to face extensive repairs to various parts of the structure. However, unlike the plaintiffs in *Affiliated* and *Pointe*, even considering the evidence in the light most favorable to SOP, it presented no evidence

that the defects in Phase 2 caused or could cause significant safety risks to a large number of people. While SOP's first amended complaint alleged that repairs and replacements were necessary to prevent "health concerns related to dry-rot and mold and compromised structural integrity of the building," CP at 20, the record contains no evidence to support these allegations. Moreover, unlike the engineering firms in *Affiliated* and *Pointe*, none of the defendants here were responsible for the design of Phase 2 such that they were in the best position to prevent major safety risks.

Although SOP relies on *Assurance* to argue that it has a viable straight negligence claim, *Assurance* is an unreported federal district court case that applies the economic loss rule rather than the independent duty rule. 2012 WL 1856504, at *3 (citing *Stuart* for the proposition that "homeowners cannot bring tort actions for negligent construction based solely on economic loss because such loss must be remedied by contract law, not tort"). Additionally, in making a straight negligence claim, SOP contends that the Pavlina companies failed to oversee construction. Its claim thus appears to be a reframed negligent construction claim.

In sum, we hold that there was no genuine issue of material fact and affirm the trial court's ruling granting summary judgment and dismissing all of SOP's claims.

## II. DENIAL OF CONTINUANCE

SOP argues that the trial court erred in denying its CR 56(f) motion for a continuance. It contends that it "offered a good reason for the delay in obtaining the desired evidence—the parties' agreement to not take depositions until mediation had concluded." Br. of Appellant at 15. Additionally, SOP contends that it plans to gather new evidence that "would raise a genuine issue

of material fact about the existence and content of construction warranties" for Phase 2. *Id.* We disagree.

This court reviews "a trial court's denial of a CR 56(f) motion for abuse of discretion." *Pitzer v. Union Bank of Cal.*, 141 Wn.2d 539, 556, 9 P.3d 805 (2000). Applying this standard, "a reviewing court will find error only when the trial court's decision is manifestly unreasonable or is based on untenable grounds." *State v. McCarthy*, 193 Wn.2d 792, 803, 446 P.3d 167 (2019). When reviewing the record, the appellate court does not "come to its own conclusions," rather, it determines "if the trial court's exercised discretion was reasonable and tenable." *Id.*

CR 56(f) states that a court may order a continuance if the party opposing the continuance cannot show facts sufficient to justify its opposition. A court may deny a motion for a continuance when the requesting party does not offer a good reason for the delay or state what evidence it expects to discover. *Pitzer*, 141 Wn.2d at 556. A court may also deny a motion for a continuance if "'the desired evidence will not raise a genuine issue of material fact.'" *Id.* (internal quotation marks omitted) (quoting *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 90, 838 P.2d 111 (1992)). A court may deny a CR 56(f) motion for any of these three reasons. *Pelton v. Tri-State Mem'l Hosp., Inc.*, 66 Wn. App. 350, 356, 831 P.2d 1147 (1992). A court does not abuse its discretion by denying a CR 56(f) motion where the requesting party seeks to depose a witness but presents no proof that the witness's testimony will be useful. *See Durand v. HIMC Corp.*, 151 Wn. App. 818, 829, 214 P.3d 189 (2009); *Vant Leven v. Kretzler*, 56 Wn. App. 349, 354, 783 P.2d 611 (1989).

We hold that the trial court did not abuse its discretion when it denied SOP's request for a continuance under CR 56(f). SOP argued that it needed to depose Pavlina, Kleweno, and Nutter to

determine whether "the terms of the sale on Phase [2] included construction warranties" and whether the Pavlina companies "either expressly or impliedly" granted it construction warranties for Phase 2. VRP at 15-16. These justifications did not adequately establish that the testimony of Pavlina, Kleweno, and Nutter would be useful. Pavlina had already sworn that Gold Medal Multi Family built Phase 2 without entering a written construction contract. Furthermore, SOP offered no basis for its speculation that Kleweno and Nutter would provide evidence of unwritten warranties, and such testimony would have been irrelevant in light of the purchase and sale agreements before the trial court, all of which contained integration clauses. Given that SOP offered no proof that these witnesses' depositions would be useful, the trial court did not abuse its discretion in declining to grant a continuance for further discovery.

CONCLUSION

We affirm the trial court's rulings. The trial court properly granted the Pavlina companies' motion for summary judgment. The trial court did not abuse its discretion by denying SOP's CR 56(f) request for continuance.

No. 56061-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Worswick, J.P.T.

Price, J.